DOROTHY ELIZABETH JACKSON *vs.* ERNEST CLIFFORD JACKSON.

ERNEST C. JACKSON *vs.* DOROTHY E. JACKSON.

JULY 20, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

334

FLYNN, C. J. These two petitions for divorce were tried together in the superior court and resulted in decisions granting the petition of Ernest C. Jackson, the husband, and denying that of his wife, Dorothy E. Jackson, and ordering certain other incidental relief. They are before us solely on the latter's exceptions to the denial of her petition and to the granting of that of her husband.

The wife's petition, filed July 22, 1943, prayed for a divorce from bed and board on the grounds that her husband had been guilty of extreme cruelty and of gross misbehavior and wickedness repugnant to and in violation of the marriage covenant in that he had improperly associated himself with women other than his wife. The husband's petition, filed July 23, 1943, prayed for an absolute divorce on the ground that his wife had been guilty of extreme cruelty and of gross misbehavior and wickedness repugnant to and in violation of the marriage covenant in that she had refused sexual intercourse without the use of contraceptives.

In addition to the decisions on the merits, above referred to, the wife was given custody of the minor child of the parties, the use of half of the furniture and was ordered to vacate by a certain date the house in which the parties lived, leaving to further proceedings in equity or to agreement the settlement of their financial interests in the real estate and personal property, including the poultry business operated on those premises. The husband was ordered to pay an allowance of $15 weekly for the support of his minor

child and each party was restrained from interfering with or molesting the other.

The parties were married April 8, 1933 and lived continuously in Rhode Island for over two years next before the filing of these petitions. They have one child, Ernest C. Jackson, Jr., who was ten years of age. All lived in a house in the town of North Smithfield, the deed to which stood in the names of both parties and both apparently contributed towards its purchase and maintenance. The husband conducted a fairly large poultry business on the premises, using portions of the house and garage for certain purposes incidental thereto. In addition he worked in the Greenville Mill and did other repair work at times. As a hobby he did experimental work with radios. The wife, prior to her illness, worked in another part of the same mill and in addition she managed the household.

Considering the wife's petition first, the evidence on her behalf showed substantially only one incident when she was subjected by her husband to any physical violence. No serious bodily injuries resulted therefrom nor did she become fearful or apprehensive of injury because of that incident or because of another, when she testified that her husband threatened to kill her. There was no evidence to corroborate the latter and none that her husband's conduct at any time had caused injury to her health. In such circumstances the trial justice was not wrong in denying her petition so far as based on the ground of extreme cruelty.

She relied, however, almost entirely on her claim and evidence that her husband was guilty of gross misbehavior and wickedness repugnant to and in violation of the marriage covenant in his associations with one "Mrs. Hambly", who also testified. What constitutes this ground for divorce under the statute has been described in *Stevens* v. *Stevens*, 8 R. I. 557, *Walker* v. *Walker*, 38 R. I. 362, and *Rainey* v. *Rainey*, 57 R. I. 426. In those cases this court has held that this statutory ground contemplated that the conduct complained of must have some character of licentiousness or

brutality allying it in its moral attributes with adultery or extreme cruelty.

The evidence on behalf of the wife, if believed, tended to support her suspicion that her husband had been associating with the above-mentioned Mrs. Hambly, particularly at a camp on a lake in Rhode Island and again at the place where Mrs. Hambly lived, in a manner that suggested misconduct and that was in any event unbecoming a married man. Some but not all parts of her testimony were corroborated by Mrs. Carpenter, one of her friends. The material portions of this evidence, however, were positively denied by both her husband and Mrs. Hambly; and other apparently disinterested witnesses testified to certain facts which were wholly inconsistent with the wife's claims and were corroborative of the testimony of her husband and Mrs. Hambly.

On this conflicting evidence the trial justice decided that the wife had not proved, as a fact, any misconduct by her husband and therefore he denied her petition on that ground. Such findings of fact, based on conflicting evidence, are not disturbed by us unless they are clearly wrong. We have examined the evidence and since we cannot say that the decision of the trial justice on such evidence was clearly wrong the wife's exception thereto is overruled.

On the husband's petition, the trial justice found, in substance and effect, that it must stand or fall on the presence or absence respectively of the alleged extreme cruelty. In his decision he dismissed the other ground of this petition relating to the alleged use of contraceptives as being of little importance and not proved. As to that he observed: "Apparently if that were so it probably was by mutual agreement." We find no reversible error in any of these conclusions, so that the decisive question is whether the evidence here justified a decision for the husband solely on the ground of alleged extreme cruelty.

What constitutes extreme cruelty as a ground for divorce under the statute does not submit to a precise definition.

This court, however, has discussed it in several cases, among which are *Hurvitz* v. *Hurvitz*, 44 R. I. 478; *McKeon* v. *McKeon*, 54 R. I. 163; *Bastien* v. *Bastien*, 57 R. I. 176; *Tremblay* v. *Tremblay*, 59 R. I. 401; *Grimes* v. *Grimes*, 61 R. I. 198. From these and other cases involving the issue of extreme cruelty, it appears that such issue must be decided upon the particular facts of each case, and that a divorce upon that ground will not be given except upon affirmative and convincing evidence that the petitioner was without fault and that the alleged conduct or acts of cruelty were intentional and resulted in some injury to the petitioner's body or health.

In the instant case the evidence relied upon by the husband, and by the trial justice in his decision, was to the effect that his wife scolded him; caused trouble for him at the mill; embarrassed him in the presence of friends; on occasions struck him; and, as the trial justice also stated: "Apparently, wherever a fight started she's the one who started it." The evidence as to the wife's nagging and scolding and causing him trouble or embarrassment at the mill and before friends cannot support the decision, because that is in the nature of mental cruelty and it was not shown that such conduct caused any injury to his health or affected his ability to work.

The one instance when his wife admittedly caused a scene at the mill was prompted by his alleged attentions to Mrs. Hambly, who worked in the room with him, and there is no evidence that his health was harmfully affected; nor was that incident the only reason for his voluntarily leaving that employment at some later date, according to his own testimony. At best, granting the evidence showed that the wife probably provoked most, if not all, of the quarrels, as the trial justice found, it does not show that his health was affected thereby and does not amount to the affirmative and convincing proof required to support a divorce on the ground of alleged mental cruelty. *Grant* v. *Grant*, 44 R. I. 169.

As to the instances involving alleged physical violence by the wife, the evidence is general and vague. The husband's testimony on this issue is largely uncorroborated and was positively denied by his wife. It is confined substantially to two general statements to the effect that his wife struck him "I would say possibly a hundred, 150 times in my married life"; and "I've got a dig on my arm here, and I got three scratches on the arm here, and I got nine socks in the face two weeks ago last Friday with her fist." He gave few, if any, details as to the circumstances under which his wife struck him on any occasion and, apart from the above-mentioned scratches, there is no evidence that any of such strikings ever hurt him, much less left a mark, or caused any substantial bodily injury or made him apprehensive thereof. Significantly none of the alleged "nine socks" in his face was claimed to have left any mark or even to have hurt him or to have interfered with his ability to work. The only fair inference is that they were all inconsequential.

At any rate, the evidence as to alleged extreme cruelty resulting from the wife's physical violence is too vague and general. None of it is corroborated except very generally by a friend of the husband who confined his testimony to mere general statements concerning some occasions when he visited the husband. There was no evidence that she ever threw any article which might reasonably cause bodily injury if it struck him and there is no convincing evidence that any of her alleged attacks caused substantial bodily injury, or affected his health, or prevented him from doing his regular work. The only evidences of bodily injuries apparently were three scratches on the arm. In our opinion, these were superficial and not enough to support his allegation.

Therefore, granting that all of these strikings were precisely as the husband testified and that they were not provoked in any way by his own conduct, although that was open to question, the evidence here, at least without some

further showing as to its nature and extent and the effect on his body or health, is not the affirmative and convincing evidence of extreme cruelty that is required to justify a divorce on that ground. This conclusion is strengthened when it is noted that an absolute divorce on the ground of extreme cruelty for the fault of the wife would vest certain rights in the husband by virtue of chap. 416, §6. See *Laranjeiras* v. *Laranjeiras*, 67 R. I. 1. That result could hardly have been contemplated by the statute, if extreme cruelty could be proved by such vague and general evidence of cruelty without any resulting substantial injury, as appears in this record.

We are of the opinion, therefore, that the trial justice erred in granting the husband's petition on the ground of extreme cruelty.

The exception of Dorothy Elizabeth Jackson in case Ex. &c. No. 8636 is overruled, and the case is remitted to the superior court. Her exception in case Ex. &c. No. 8637 is sustained, and, on October 2, 1944, the petitioner therein may appear before this court and show cause, if any he has, why this case shall not be remitted to the superior court with direction to deny and dismiss the petition.

*Henry E. Crowe, Thomas Hetherington,* for Dorothy Elizabeth Jackson.

*Earle B. Arnold,* for Ernest C. Jackson.